Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding. Case number 21-0482, People v. Nilan Drake. Good afternoon. My name is Justice Michael B. Hyman. With me is Justice Carl Anthony Walker and Justice Sanjay Taylor. Each side has 20 minutes. And when you introduce yourselves, appellant, will you please tell us how many minutes you wish to reserve for rebuttal? You can introduce yourselves now. Ross Allen Good afternoon. My name is Ross Allen. On behalf of Nilan Drake, the appellant, I would like to reserve five minutes for rebuttal. Thank you. Justice Michael B. Hyman Thank you. Reetha Stotts Good afternoon. Reetha Stotts on behalf of the people. Thank you. Unless anybody has any questions, we're ready for you to proceed. Ross Allen Thank you. May it please the court. Ross Allen from the Office of the State Appellate Defender representing the appellant, Nilan Drake. I plan to discuss both arguments today. First, that the state failed to prove Drake guilty beyond a reasonable doubt when it presented insufficient evidence that Drake used or threatened force. And then also second, that the circuit court failed to adequately inquire after trial into the factual basis of Drake's claims of ineffective assistance of counsel. I'd like to take it in reverse if you don't mind. I'd like to ask you on the ineffectiveness of counsel. The state argues harmless error. Reetha Stotts Yes, Your Honor. So you can't employ a harmless error analysis here because we don't actually know what the factual basis of Drake's claims are. Now, we know the witnesses were correctional officers, right? Ross Allen Right. But other than what was laid out in the memo saying that these correctional officers were involved in any movement of inmates and conversation with of relevance, we don't know what that direct knowledge is. We don't know what they directly witnessed. We don't know how they are relevant. We don't know why they weren't called. And the circuit court needed to essentially inquire as to the factual basis underlying those claims. You know, Drake made vague claims and the court made a cursory inquiry that did not sufficiently. Reetha Stotts There was a pleading filed by the lawyer for Drake?  Reetha Stotts The court requested. Didn't that suffice? Ross Allen It didn't. It actually made more questions than it answered. You know, in that, it essentially said that they, you know, had this direct knowledge or directly witnessed the events, but we don't know what that knowledge was or what those events were or how they were relevant. The court needed to do more and make counsel elaborate. You know, what direct knowledge did they have? And, you know, what did they witness? Reetha Stotts Well, how do you respond, Mr. Allen? I'm sorry. Mr. Allen, how do you respond then to the state's argument, though, in People v. Jackson and People v. Williams, where our Supreme Court found the inquiries that the judge had made were enough, and the judge did hear from Mr. Drake, and the judge did hear from the defense counsel via the document, the memorandum filed. Was that not enough, given that the judge tried the case himself? Ross Allen Well, in Williams, they specifically identified the witnesses that were not called. Here, we don't know who those witnesses were and what they would have testified to. So I think that's the key difference, is we don't actually know what they would have testified to. You know, I also think that if you look at counsel's memo, you know, counsel couldn't even, you know, couldn't even argue that he was ineffective in it. He simply, like, asked the question, you know, was it objectively reasonable for a defense counsel not to present this testimony? He didn't even make an argument for that. And then as to prejudice, he didn't even argue that Drake was prejudiced. He just said, it's very possible that Drake was prejudiced. And so at that point, the court needed to inquire more of counsel, because counsel wasn't going to argue for that ineffectiveness. So he needed to ask counsel questions about, you know, who these witnesses were, what they would have testified to, why he chose not to call them. And, you know, and that's what they needed to do. I think McLaurin is very helpful, because similar to here, the court in adequate, because there wasn't enough in the record to properly evaluate the ineffective assistance of counsel claims. Peacock is also instructed there, the record did not show who the defendant wanted his counsel to subpoena for trial, or what they would have said. And the circuit court inquiring more. What about the state in its brief says that it is undisputed that the defendant's claims pertain only to matters of trial strategy? We don't know that. I mean, we don't know that. They say it was undisputed. And they said in the right way. I mean, no, I mean, I didn't, I didn't, I didn't say that in the brief at all. There wasn't, there essentially was not, there was no factual basis to make that determination, because we don't know what those witnesses would have testified to. How can you say it was trial strategy without knowing what they would have testified to? I mean, counsel said it was trial strategy. But again, we don't know the underlying basis of, of what, of what they would have testified to. And it's counsel who, you know, represented Drake at, at trial, he isn't going to want to, you know, call himself ineffective. I mean, you can just look at the memo, where he just asked questions and said it was, it was possible. You know, and that's why, you know, if counsel couldn't answer those questions, then the court needed to ask Drake. And, you know, even in the circuit court, the, the states suggested to the, to the circuit court to inquire further, but the circuit court did not. And so without the factual basis of the claim, there is no way to know if it was trial strategy. Mr. Allen, there was a civil lawsuit that arose out of this incident. Is that right? Yes. And I assume that there were some disciplinary proceedings before the Sheriff's Merit Board regarding individual deputies. You know, I'm not, I'm not, I'm not fully versed in that litigation. But my point is that, my point is that presumably these so-called, these witnesses, whoever they are and whatever they have to say, presumably there's some, you know, their testimony may be documented somewhere, whether it's in a deposition or testimony before the Merit Board. And so, and I understand none of that's in the record, but are you aware of anything in the testimony to indicate that they might have anything of relevance to add to this issue? Your Honor, I am not. And I think that's why counsel needed to make a factual basis. You know, he needed to provide that evidence and put that before the trial court. Because again, the memo referenced four or more, or at least four sworn correctional officers. And so, you know, my limited memory of the civil proceeding was there was only one person was terminated based upon this. So there could be, you know, other, you know, something that were not involved in that litigation. And so, you know, but, you know, these are the kind of facts that needed to be put in front of the trial court to make that determination. Let me put my, you know, let's put us all in a trial judge's position, right? We have Mr. Drake's claim. It's ambiguous as to, you know, who these witnesses are, what they had to say. Then counsel files a memo, which is equally as ambiguous. And so couldn't the trial judge determine based on what's before him that there's really nothing here? I think he could have if he had inquired more. I think that the memo, especially from counsel. Where do you draw the line of the, I mean, counsel prepared a memo, presumably to address these issues and presumably address the ineffective assistance claim, but yet really put forward nothing of substance. Right. And so what more, what more does the trial court have to do then? I think that after the trial counsel put forth a memo without any substance, he had a duty to inquire further and actually ascertain what the claims were because the memo, which was the goal, you know, in trying to ascertain what those claims were, was insufficient. And because of- But your argument is that the trial judge didn't conduct an adequate crankle hearing, right? Well, I'm saying that he didn't do an adequate inquiry. He needed to inquire further to- He being the trial judge? He being the trial judge? Yes. Yeah. So you're saying that, I mean, he started the, he had a hearing and you're saying it wasn't completed? Yeah. I mean, it is what the state told the court before the motion was denied. There was a hearing before the denial where the state suggested that the court needed to inquire further. The judge did not have a transcript of that hearing. So he asked for continuance. And then at the beginning of the next hearing, the judge simply, at the beginning, filed his written order denying Drake's claims. But the memo, essentially just, yeah, after the memo was filed, there was enough, the memo created more questions than it answered. And the court needed to find out more about what those witnesses, four or more, would have testified to and why counsel chose not to do that. That, you know, it also applies to the issue of leading questions. The court, there were numerous leading questions throughout the which specific questions Drake had wanted his counsel to object to. And so without knowing that, the circuit court was unable to make a proper determination. If there's nothing further on my second issue, I'd like to pivot to my first argument. Where the state failed to present sufficient evidence that Drake used force or threatened force when he sexually penetrated BD. The state only showed that Drake said, come on, or let's go and touched her head. The underlying charges stem from an incident in lockup behind courtrooms 105 and 106 at the Markham courthouse. We know the facts. Okay. She's in a cell, right? She knows she's in a cell. Yes. Yeah. We don't know the size of the individuals in there, but we can assume he's male and she's a middle-aged female. So he's probably stronger. And, you know, I mean, to say that she, you're saying that there wasn't enough, that she had no way of leaving this confined space with him right in her face. Yeah. I mean, the state only, again, the only evidence the state presented was that he said, come on, or let's go. And that he touched her head at some point. And so Mr. Allen, that's just, just stopping you there at him touching her head, telling her to come on. And here at this point, we've got to take the evidence and like most favorable to the state. And then our question is whether or not no reasonable trial of fact would have found defendant guilty. And that's where we are right now. And now you're admitting that he put his hands on her. And just once you put your hands on someone, you know, especially anywhere around the head, the face, you know, that's pretty much just a decorum violation to put your hand in someone's face or on their face or on their head. So you want to respond to that and let us know how we need to deal with that. Yeah. So again, the evidence was that he touched her head. We aren't, we don't know if it happened before the sexual penetration, if it was after, during. And again, you know, I understand the standard of review, but you're not supposed to allow for speculative inferences. And essentially the only evidence was that it was come on and let's go. And they needed to show that BD was compelled to submit to Drake and the state essentially presented no evidence of that. And, you know, there has to be some kind of force and simply touching someone's head. Yeah. So I was going to go, you're saying that touching the head is not enough force to be considered force. Is that what you're arguing now? Under the Illinois? Yes. Under Illinois. Yes. Yeah. I mean, there's been cases, baskets where the complaint actually testified that the defendant forced their head down to engage in oral intercourse. You know, the state argued that resistance was futile based upon superior strength, but the appellate court rejected that argument, finding that resistance could have been successful. We just don't have the facts here. There was just not any facts listed to, you know, Drake's size, you know, how he stood or used his body. Those are all things the state could have done and could have elicited at trial to establish that BD was forced to engage in sexual intercourse. But yeah, no, the- Mr. Allen, did the evidence in this case, when he said, when the defendant said, come on, let's go, he was positioned next to the victim, wore his pants down? There's no evidence of that. So I don't, you know, she did not say. She essentially said she, you know, refused to stand up and engage in vaginal intercourse. And then, you know, they instead engaged in there is the testimony from BD was incredibly sparse. And, you know, they simply just come on, or let's go. And then, yeah, touched her head. And then, you know, you know, and then again, there, it wasn't even clear if the door to her cell was open or, according to her, if she knew or not, whether or not the door was open or closed. And then, you know, even if the, you know, even if the state could show that BD knew the door was closed, the state had to show more. They had to show, you know, how Drake used BD's confinement to force her into engaging in oral intercourse. The element of force refers to actions by the accused that physically compel. Is there any other questions? If you could wrap up. Sure. You know, therefore, this court should reverse Drake's conviction for criminal sexual assault. And without any further questions, I will save the rest of my time for rebuttal. Thank you, Castle. Thank you, Your Honor. Whether an inquiry is adequate doesn't turn on whether you have a hearing or you file a memo, or you ask certain questions of certain people. The inquiry is adequate if it enables the court to make the determination it needs to make at the first stage, which is to find out enough about the factual basis of the claim to determine whether it needs to appoint counsel. It doesn't need to know every detail of the claim. It needs to know whether it's possible neglect or whether it's trial strategy. And so, I would note here that there are a lot of cases that talk about an adequate inquiry. Let me ask you a question, though, Ms. Stutz. Isn't it correct that the counsel called no witnesses? He introduced the stipulated testimony of Deputy Galena. So, he put her stipulation in rather than calling her. Okay. And he called no other witnesses, correct? Correct. Okay. And so, you believe that that's trial strategy, just thinking that you're going to try this case and call no witnesses whatsoever? Well, it's not what I believe. The we cited a number of cases on that proposition in our brief, and defendant has not responded to those in reply. So, this particular situation, a failure, a decision not to call known witnesses is categorically strategic. Not only that, we know that this one was strategic because counsel said so. This is at page 340 of the transcript. He says, I didn't call any witnesses, and that was my choice. If counsel makes a choice, that is trial strategy, and that does not require... He also admits that it was a bad choice. He's doing his best to put forth his client's claim, which is what he has to do here when his clients asked him to present it. It's not a good claim, but he has to forward it anyway, and that's what he's doing. I just wanted to know, this is different from some crinkled things come up when it's a pro se defendant who just says like, my attorney made a mistake. Of course, in that situation, the court's going to have to inquire. He's going to have to ask the defendant, what are you talking about? This was a very different situation. We know from the post-trial motion that counsel talked with his client about this. He said, the claim of ineffective assistance was discussed by counsel and defendant after trial. Counsel then incorporated defendant's concerns within the defendant's post-trial motion as his client wanted to raise in the motion. It's not a great claim, but that's all the details we have. But if we look at what happened here at the next to last hearing in which the judge ruled, at the hearing before that, when the judge asked for the defense attorney to prepare a memorandum, at that hearing, the state said, well, we're supposed to have more testimony. Basically, the state agreed. And then there was no more testimony. And as we know, the memo, it's very vague. So it seems that the position of the state was, we need a little more here. And then on appeal, all of a sudden, that disappears. And you say, well, we got enough that we should affirm. So, I don't understand why we're here, to tell you the truth. If there was no more specifics given, and the state was the one saying, we need more, why are we here? I have to disagree with that characterization a little bit. We did make some comments about their inquiry. It's very possible that the attorney didn't remember exactly what was already in the record. Oh, you can't say that. That's speculation on your part. You say it's possible. I mean, no, no. We take the transcripts the way they're written. We do this all the time, right? You do this all the time. So let's use the words that were used. And it's in the briefs. Not the first time, too, the state said we need more, right? One of the things the state asked for was for the court to re-ask questions of the defendant it had already asked. So the state seems to confirm concern about making a record, but we did not concede that it was necessary and what had been done before was legally inadequate. And it wasn't. We know these claims were strategic. Also, in terms of what the memo fleshed out, I think there's another part that hasn't been referenced here. The counsel does give a little more in the memo. This is at C-151. He says, specifically, the officers were witness to the demeanor of the complaining witness and had direct knowledge of the condition of the complaining witness. So this suggests these are witnesses after the event. Presumably, they would say, well, she didn't look that upset. She wasn't crying. She didn't immediately outcry. That evidence already came in the state front of that evidence and explained that BD did not reveal all the details while she was at Markham. She was afraid. She wanted to wait until she got back to the jail where she felt safer. And there was some evidence of witnesses that she was crying. That's Freeboard and Central Rogers. Both testified they saw her crying in the cell. So whatever any correctional officers might have been able to say about how distraught she looked would not have been enough to make any possible difference in this case. Oh, as for the leading questions, the court was a fact finder at trial, and it said in its ruling that it had reviewed the entire transcript. So the court knew whether there had been leading questions asked and whether it could have made any possible difference. And again, those two are categorically strategic. They never require appointment of new counsel under Krankel. And so I'll move to the sufficiency issue just briefly. It's very clear her defendant used BD's confinement to overcome her. That's in the statutory definition of force. And, you know, he I want to go back. I mean, is your position that any time an ineffective assistance claim is based on a failure to call a witness, that it automatically fails? It could depend slightly on how it's framed. But this is clearly about known witnesses that counsel knew about. And he says he made a choice here. It is absolutely strategic. If it you know, if it was a claim like, you know, you didn't you didn't interview my witness or you I said I had an alibi. You never talked to him. That could be different. Wouldn't it? Wouldn't he counsel me? Counsel said he made a choice. But it could have been a, you know, a negligent negligent choice in the sense of a witness who could have substantiated the defense in this case. And that's one thing. But on the other hand, if it was a close call, you know, there might be reasons not to call the witness because, you know, it might undermine undermine other aspects of the defense. You know, I get that. But I'm having a difficult time accepting your proposition that any time an ineffective assistance counsel base is based on the failure to call a witness, it's, you know, by definition, it fails because it's a strategy decision. I want to clarify that we're not arguing at all that it necessarily fails. You can absolutely bring a Strickland claim based on a strategic decision. It's hard because there's a strong presumption that it's reasonable, but you can certainly bring it. So that's the merits question. What we're talking about here is a different question. It's whether you need to appoint counsel. And the rule that Illinois Supreme Court has said is that you don't appoint counsel if it's strategic, even though a strategic error could conceivably result in a meritorious claim. So in other words, you know, you don't appoint counsel on every theoretically meritorious claim. You only appoint if it's possible neglect. If it's strategic, even though that could be meritorious, you don't appoint. And so our position is not that you can't prevail on these, but just that they are strategic, and so they never require appointment of counsel. Where in the record are the names of these individual witnesses? I don't know that they're in the record, Your Honor. Right. And that's what counsel was arguing. He said, we don't know who they are. And it seems that if we don't know who they are, how do we know what they would testify to, what they saw, whether they, you know, had something to do with before, you know, how she was left, what happened afterwards, what the defendant said, we don't know. We have no idea. And so I think the point is that without that, we can't answer those questions that were raised by counsel. I mean, I'm just bringing up what he said. And it seemed to me that was partly the reason why the state said what they said, which was not a bad thing. I mean, I think the state was trying to avoid, you know, a delay on this. But, you know, the next thing that happened, the judge had ruled. So we don't have the benefit of that. But we still don't know who those witnesses are. And without that information, how can we answer this? I think the answer is, we look to mandatory Supreme Court authority on this issue, which is one, you only appoint new counsel if it's not strategic. And two, the failure to call a known witness is categorically strategic. So, you know, given that case law, the court didn't need to ask more. But those bases have been granted for ineffectiveness, right? Those are, could be, it could be, it might be hard, but they can be. And without further knowledge, this is the argument, we can't make that decision. So sending it back, which is what they're asking for, to just to get this information, doesn't that make sense? But the point of this, the initial crinkle is not to get to the bottom of every theoretically plausible. We don't even know who the witnesses are. Isn't that a first step? You have to know who the witnesses are? I mean, if you don't know that, how can you answer it was strategic? Not here where the Supreme Court has said this is categorically strategic. And we have counsel on the record saying, I made a choice not to call these witnesses. The case law says that court can accept counsel's representations on this. And if he made a choice, it's strategic, they didn't need to appoint new counsel. So the inquiry was adequate. I'm sorry, but usually counsel, when you see these, it's usually a situation where counsel responds with, yes, judge, he did want me to call this witness, but that witness would not have been helpful. And usually, that's usually when counsel, that's strategic, because counsel has usually made a decision that witness is not going to help this case. And I don't want to call that witness. Now that's strategic planning, not just simply saying, I don't know who the witnesses are. And I didn't call any of them. I didn't even bother to find out who they might be or what their names are, especially given that we're clear now that the names are nowhere in the record. I don't know that it's fair to say that counsel didn't know who these witnesses are. I think Justice Taylor is correct. There was undoubtedly a large amount of paperwork about this, given the civil case. There was surely tons of discovery material. And we're very familiar with the civil cases. Counsel, we served on the civil cases. So we know all about the civil cases. We served on some of them. So we don't need a lecture on the civil cases. You can move on, though. All right, moving on to returning to the sufficiency. The evidence of forced confinement is even stronger here than in the ambulance case and the massage parlor case, because the defendant didn't just find himself in BD's cell. He planned and tricked his way into her cell. He lied to the guards. He said she was gone so he could get in her cell and take advantage of her. This is clearly using her confinement to overcome her will. And I would note that the defendant himself, in his grievance, stated that Officer Kalina secured him in the cell. We do know by defendant's own account that the cell was locked. Is the record clear on when the defendant placed his hand on the victim's head? Do we know if he had dropped his pants? I don't think that's in the record. Unless the court has further... I was just going to ask that. Are there any other further questions? Proceed. Well, then I ask the court to affirm the judgment. Thank you very much. Rebuttal. Just briefly, your honors. First, as the second issue, the inquiry was inadequate. The state just wants to accept counsel's statement that it was strategic without knowing who the witnesses were. We don't even know how many witnesses there were. The motion says at least four. So counsel, from that motion, has shown that he didn't even know how many exactly there were. Also, the Supreme Court authority refers to situations where specific witnesses are identified, not vague numbers of witnesses. I also think it is important to consider that, essentially, counsel was raising his own ineffectiveness here. Even though the court asked counsel to elaborate by writing that memo, once the memo was insufficient, the court needed to follow up and get counsel to elaborate. We can't expect counsel to make an argument as to his ineffectiveness. So the court needed to either ask him about the facts or the court needs to appoint new counsel. As to my first issue, I would just point you to LaMonica. I think it is because in LaMonica, the second district reversed, even though the complainant testified that defendant had essentially grabbed her. So it was not the face, but they basically reversed because defendant had not threatened her, held her down, or grabbed her so hard that she could not release his grip. I would also point you to Mombula, Moscow. There, it also shows that there needs to be more to show that defendant used force to compel the complainant. Just presuming that, because he's a man and bigger, there needs to actually be facts adduced at trial as to that. Same thing with the confinement. There needed to be facts adduced at trial as to that. And the issue is not whether or not the cell door was closed. The issue is whether or not what BD knew and how that impacted Drake's actions and whether or not she felt compelled to submit. And there was just not enough evidence of that. If there are no further questions, I will just finish with this. Court should reverse Drake's conviction because the state failed to prove that Drake used or threatened force. And in the alternative, this court should remand Drake's case for a preliminary inquiry consistent with Prankle. Thank you very much. Appreciate both of your arguments and your briefs, which we will now take under advisement. And we will forthwith decide the case. So thank you very much and have a good afternoon to both of you. Thank you. Thank you.